McAllister *v.* Henderson.

Filed May 18, 1893.

———————◆———————

No. 16,170.

McALLISTER *v.* HENDERSON.

DRAINAGE. — *Construction of Ditch by Adjoining Land-Owners.—Obstruction of.—Suit to Enjoin.—Equity.—Noncompliance with.*—A. and B., adjoining land-owners, by mutual agreement, constructed a tile drain, or ditch, commencing at a pond on the land of A., and ending at a natural outlet on the land of B.; each constructed the portion of the ditch on his land, the ditch carrying off the water which naturally collected and flowed through the same, which taxed the ditch to its utmost capacity. Afterwards·A. lowered the ditch on his land, and constructed lateral drains, turning into said drain and pond a large amount of water which did not naturally flow therein, and rendering the drain useless to B., and a large part of his land unfit for cultivation, by reason of the capacity of the ditch being thus wrongfully overtaxed, all without the consent of B. B. took up a portion of the tiling on his land and filled that part up with earth obstructing the ditch and backing the water up on the land of A., rendering a portion of it unfit for cultivation. A. brought suit to enjoin the obstruction, and to quiet his title to an easement

in the land of B. for the flow of water from his lands through the ditch.

*Held*, that the plaintiff was entitled only to such rights as the original construction of the drain, in accordance with the arrangement or agreement in relation thereto, gave to him, and this right he might have enforced had he not voluntarily put himself in a position where the enforcement of such right would necessarily give him the benefit of the wrong he committed, and allow the water wrongfully turned into the drain to flow through it.

*Held*, also, that to grant the plaintiff relief would violate the rules that he who seeks equity must do equity, and that he who comes into equity must come with clean hands.

NEW TRIAL.—*As of Right.*—*When Party Entitled to.*—*Quieting Title to Easement.*—In an action where one of the issues involved is that of quieting title to an easement, the party against whom judgment is rendered, or his heirs, assigns, or representatives, are entitled to a *new trial as of right*, when the statutory requirements are complied with.

From the Montgomery Circuit Court.

*T. F. Davidson* and *J. West*, for appellant.

*B. Crane* and *A. B. Anderson*, for appellee

OLDS, J.—This is an action by the appellant against the appellee to enjoin the obstruction of a certain tile ditch, commencing at a pond on the land of the appellant and terminating on the land of the appellee, which had been constructed by agreement of the parties owning the land at the time of its construction, for the purpose of draining their land, subsequent grantees having purchased with knowledge of the drain.

The complaint alleges the facts showing that the parties were adjacent land-owners, and that for the purpose of draining certain of their land through and along the natural outlet for the water to flow, it was mutually agreed between them that they should construct a tile drain, each constructing that portion which was located on his own land respectively, commencing at a pond upon the land of the appellant, extending to and upon the land of the appellee, and then terminating in an open

drain where it had an outlet, and that they did so construct the said drain at a large expense to each of them; that appellee had, without right, dug up and taken out the tile to the distance of a few rods of the ditch on his own land and near to appellant's land, and filled it in with earth, thereby obstructing the ditch and stopping the flow of water, causing the water to back up and overflow appellant's land, rendering the land otherwise good for cultivation entirely worthless for such purposes.

It is further formally alleged that the appellant has an easement in the land of the appellee through which the ditch passes, which consists in the right to flow water through said drain, which appellee denies and casts a cloud upon appellee's title thereto. Prayer for quieting the title to his easement, for a mandatory injunction requiring the appellee to restore the ditch to its original condition, and that he be enjoined from further interference therewith. No question is presented as to the sufficiency of the complaint.

To the complaint, the appellee answered in two paragraphs. First, in denial, and second, as follows:

"For a second and further paragraph of answer herein, defendant says: That he admits that in the year 1877, one Atwell Mount, the then owner of the lands now owned by defendant, constructed a tile drain of six-inch tile from the south line of his said land to the point near to the barn, as alleged in the complaint, and he avers that said tile drain so constructed was sufficient to carry off of defendant's land all surface water which naturally flowed upon said land, and made said land susceptible of cultivation; that afterwards, in the following year, plaintiff's grantor, Jesse McAllister, constructed a tile drain on his land from the pond mentioned in the complaint to the south end of said Atwell Mount's drain, and joined and connected the same thereto, mak-

ing a continuous drain from said pond to said point near to said barn; that after the construction of said drain by said Jesse McAllister, the tile drain on defendant's land was sufficient to, and did, carry all the surface water that it had theretofore carried, and in addition thereto the water discharged by said McAllister's drain, but said water taxed said drain to its utmost capacity; that afterwards, to wit, in the year 1887, plaintiff's grantor, Jesse McAllister, without the knowledge or consent of the defendant or his grantor, took up his part of said drain between said pond and the drain on defendent's said land and lowered the same about two feet so as to more effectually drain said pond and his said land, and constructed on his said land about two hundred rods of lateral drain, draining into his said drain and into said pond, as a sort of catch-basin, a large amount of water that did not naturally or before that time flow into said pond and into said drain; that the drain on defendant's land was not sufficient to carry off the large amount of water thus thrown into it by the lowering of said drain on plaintiff's land and the construction of said lateral drain, and by reason of said water being thus cast into his said drain the same was rendered useless to him and to his said land, and his said land was overflowed and a large part thereof rendered unfit for cultivation; that in order to redrain his said land and enable his said drain to carry the surface-water from said land, as it was originally intended to do and as it had done prior to the acts of the plaintiff and his grantor in lowering their said ditch and constructing said lateral drains and throwing additional water into defendant's said ditch, defendant took up a rod and a half of his said tile and filled the ditch in, as alleged in the complaint; that before defendant took up said tile and filled in said ditch, he notified plaintiff and plaintiff's grantor that the lowering

of said drain, and the construction of said lateral drains, and the consequent pouring into his drain of the additional water, rendered his drain useless to him, and rendered his lands wet and unfit for cultivation, and asked plaintiff to relieve him and his said lands of this burden, but plaintiff refused to do so, wherefore defendant asks judgment for costs."

To the second paragraph of answer the appellant filed a demurrer, which was overruled and exception reserved, and this ruling is assigned as error. By this ruling, the question is presented as to whether the appellant is entitled to the relief sought under the facts as shown by this answer.

It shows a state of facts more briefly stated as follows: The owners of the land, by agreement, constructed a tile drain from a pond on the land owned by the appellant, extending onto and having an outlet on the land owned by the appellee to drain the water from the lands of the two parties which naturally flowed into and through the drains so constructed. The ditch as constructed was sufficient to and did carry off the water naturally flowing into and through the ditch, and rendered the land so intended to be drained by said ditch suitable for cultivation, and performed the purpose and accomplished the object for which it was constructed for the period of two years. Yet, in so doing, it taxed the drain to its full capacity.

Contrary to the arrangement, object, and purpose for which the ditch was so constructed, the appellant or his grantee, the then owner of the land now owned by the appellant, upon which the pond was situated, lowered the ditch upon his land two feet, and constructed lateral drains, turning into the drain, and into the pond and thence into the drain, a large quantity of other water which did not naturally or previous to the lowering of

the ditch and the construction of the lateral drains, flow into or through said ditch, thus overtaxing the tile ditch, storing the water in the catch-basin or pond at its head, and feeding it from above the appellee's land so as to render it useless for the purpose for which it was constructed, in so far as the benefit of the appellee and his lands are concerned, and rendering his land so drained by it unfit for cultivation.

The appellant having mixed or intermingled and caused to flow together on his own lands, and from thence into the drain, water which he had no legal right to turn into and have flow through said drain with those which had the right to flow through said drain, causing a surplus of water, overtaxing the drain, and rendering it useless for the purpose of draining appellee's land, the appellee having no means of stopping the flow of the surplus, which appellant had no right to cast upon his land through said ditch without shutting it all off, he took up a portion of the ditch and stopped the flow altogether. The appellee, no doubt, had a legal remedy for this breach of duty on the part of the appellant, but, not desiring to resort to it, and adopting the summary remedy which he did, is the appellant in a position to enforce in a court of equity his right to the use of the drain, when it appears that to do so, and to open the drain at all, will cast upon the appellee water which has no right to flow through said drain, or into or upon or across the lands of the appellee?

The facts pleaded in the answer show that the appellant has, without right, caused the water which would lawfully flow through the drain, and the water having no right to flow through it, to intermingle and mix at the head of the tile drain, causing a surplus affecting injuriously the lands and the rights of the appellee; and to open the drain, the water from the various sources must

necessarily flow through the drain together, and are inseparable, and the pond affords a reservoir at the head of the tile drain, supplying the drain to its full capacity for a longer time than necessary to carry off the water which of right flows through it, and destroys its usefulness to appellee's land.

It occurs to us that the ruling of the lower court was right; that the appellant comes into a court of equity with stained hands; that he comes not only to enforce a right, but to enforce likewise a wrong, and to profit by his wrongful act; that he asks a court of equity to compel the appellee to open up the drain, and refrain from interference with it, when to do so will permit the water which by his act he has wrongfully caused to flow into the drain at its head, to flow through the drain into and upon appellee's land.

This is contrary to all principles of equity. It is one of the very first principles of equity, that he who asks equity must do equity; that a party coming into a court of equity must come in with clean hands, free from wrong himself in relation to the matter in which he asks equitable relief. Appellant has voluntarily put himself in a position where he can not have the relief to which he is entitled, except he profit by his own wrong, and this being the case, a court of equity will not aid him. *Harrison* v. *Haas*, 25 Ind. 281; *Jones* v. *Ewing*, 107 Ind. 313.

The appellant was entitled only to such rights as the original construction of the drain, in accordance with the arrangement or agreement in relation thereto gave to him, and this right he might have enforced, had he remained in a position to have done so, *i. e.*, had he not voluntarily put himself in a position where the enforcement of such right would necessarily give him the benefit of the wrong he committed, and allow the water he wrong-

fully turned into the pond and drain to have flowed through it. *Onthank* v. *Lake Shore, etc., R. R. Co.*, 71 N. Y. 194; *Bannon* v. *Angier*, 2 Allen, 128; *Jamison* v. *Walker*, 12 Johnson, 222.

The conclusion reached in this case is not in conflict with the decision in *Ferguson* v. *Spencer*, 127 Ind. 66, holding that a license of this character is irrevocable, our decision in this case being based upon the theory that appellant had voluntarily put himself in a position where he could not be granted the equitable relief asked, without profiting by his own wrong, as in the decision fully shown.

There is a further question presented by the record. The complaint alleges, specifically, that the appellant has an easement in the land, consisting of the right to flow water through said drain, and that appellee is denying said right, and is attempting to destroy said drain, which denial and attempt are wrongful, and casting a cloud upon appellant's title to such easement, and the prayer asks to have such title quieted.

It has been held by this court that an action will lie to quiet the title to an easement. *Sanxay* v. *Hunger*, 42 Ind. 44; *Davidson* v. *Nicholson*, 59 Ind. 411.

It has further been held, that the right to a new trial as of right exists in actions to quiet title. *Bisel* v. *Tucker*, 121 Ind. 249; *Hammann* v. *Mink*, 99 Ind. 279; *Shuman* v. *Gavin*, 15 Ind. 93; *Physio, etc., College* v. *Wilkinson*, 89 Ind. 23; *Hunter* v. *Chrisman*, 70 Ind. 439; *Earle* v. *Peterson*, 67 Ind. 503; *Zimmerman* v. *Marchland*, 23 Ind. 474; *Shucraft* v. *Davidson*, 19 Ind. 98.

The appellant moved the court for a new trial as of right, without cause, and filed an undertaking for costs, as required by the statute, and the court granted a new trial, making the proper order.

Afterwards the appellee filed a motion to vacate the

McAllister *v.* Henderson.

order granting the new trial, which motion was sustained, and the order granting a new trial was vacated and set aside.    To this latter ruling and action of the court the appellant excepted, and this ruling is presented for review by this court.

It is stated, by counsel for appellee, that this ruling was made on the authority of *Hall* v. *Hedrick*, 125 Ind. 326, which they regard as sustaining the action of the court in vacating the order.    The order was vacated soon after the decision in that case was rendered.    If the action of the court was based upon the decision in that case, it is evident that the action, being taken before the decision was reported, that the trial court must have acted upon an erroneous abstract of the opinion.    A careful examination of the opinion will disclose the fact that it does not sustain the action of the court in holding that the appellant was not entitled to a new trial.

The case of *Hall* v. *Hedrick, supra,* was simply an action to enjoin the obstruction of a right of way over and across the land of another.    The complaint in that case did not seek to quiet the parties' title in the easement, while in this case that specific relief is prayed for.    If all the relief the appellant sought in this case was an injunction, he would not be entitled to a new trial as of right without cause, but he does more, he asks to have his title quieted, and to enjoin any obstruction of or interference with his rights by the appellee.

The court erred in vacating the order granting a new trial, and for this error the judgment must be reversed.

Judgment reversed, with instructions to the circuit court to set aside the order vacating the order granting the appellant a new trial, and to grant him a new trial as originally ordered, and for further proceedings in accordance with this opinion.

Filed May 16, 1893.

## DISSENTING OPINION.

COFFEY, C. J.—I dissent from so much of this opinion as holds that the court did not err in overruling a demurrer to the answer of the appellee.

